IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:17-CR-00414-N |
| | § | |
| KAMYAR JAHANRAKHSHAN | § | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

The United States of America, by and through the undersigned Special Attorney acting under authority conferred by 28 U.S.C. § 515, opposes the defendant's Motion for Early Termination of Supervised Release (*Dkt*. 142). Nothing in the defendant's Motion nor his own conduct while on supervised release has demonstrated that early termination is warranted and would be in the interest of justice, as required by 18 U.S.C. § 3583(e)(1). Section 3583(e) lists the particular factors in § 3553 the Court may consider when evaluating whether early termination of supervised release is appropriate. The government will address each of those factors in turn, below.

**Section 3553(a)(1):   The nature and circumstances of the offense and the history and characteristics of the defendant.**

Although not counted in his criminal history computation for sentencing purposes, the defendant's criminal conduct dates back to 2003, when he was accused of Identity Theft, Theft, and Possession of and Trafficking in Stolen Property in Washington state. *See* Presentence Report (PSR) ¶ 51. He pleaded guilty in 2005.[1] In 2008, Canadian authorities charged the defendant with

---

[1] The plea was withdrawn in 2011. During the course of the federal investigation into the defendant's cyberattack, a Washington state prosecutor informed the AUSA that the Whatcom County, WA prosecutor's office suffered repeated harassment by the defendant and therefore decided to placate the defendant by vacating his conviction.

**Government's Response to Defendant's Motion – Page  1**

forty counts of Credit Card Fraud and Bank Fraud. He was convicted in 2012 and sentenced to prison. Meanwhile, in 2009 the defendant was accused (also in Canada) of Obstruction of Justice, Criminal Impersonation, Possession and Use of Fraudulent Credit Card, and was convicted in 2011. PSR ¶¶ 47, 49. In September 2014, he was deported from Canada. As the Court is aware, the defendant's offense of conviction and sentence arose from cyberattacks he conducted in 2015 against multiple online publications that reported his previous criminal conduct on their respective websites. PSR ¶¶ 9-18. The defendant even made bomb threats against one in particular. PSR ¶ 17. And after his arrest on the instant offense, the defendant continued his misconduct by lying to this Court. PSR ¶¶ 23, 67.

Based on his previous employment history, the skill required to conduct his cyberattacks, and the quality of his court filings, the defendant has demonstrated the intellectual ability to understand the nature of the crimes for which he was accused and convicted, yet he continues to re-offend. This factor weighs against early termination.

**Section 3553(a)(2)(B):   To afford adequate deterrence to criminal conduct.**

The defendant has engaged in recent conduct against other entities who have published information about his past crime. The nature of this conduct is alarmingly similar to the underlying crime of conviction. First, beginning in February 2022 the defendant called the Public Information Officer for the United States Attorney's Office in the Northern District of Texas and demanded that the press release issued about the instant offense be removed from the Justice Department's website. Within a week of that call, the defendant physically entered the Seattle office of the United States Attorney's Office for the Western District of Washington and demanded to speak with its Public Information Officer. He also emailed and telephoned the WDWA USAO Public

Information Officer, demanding the same press release be removed. Through at least August 2022, the defendant continued to contact the Justice Department, even after it was escalated to the national press office, and he repeatedly accused the original Assistant United States Attorney of intentional harassment via the press release. Also, from approximately March 2022 through December 21, 2022 (the date on which the WDWA Probation Office served the defendant with the summons issued by this Honorable Court (*Dkt.* 145)), the defendant repeatedly contacted the Dallas Morning News demanding it remove articles reporting his criminal conduct. He claimed he was "tormented everyday by these articles," and believed the FBI instructed the Dallas Morning News to keep the articles "up" to provoke him. *See* Attachment A. This is identical to a claim the defendant made to the victim in the instant case, Leagle.com, as reported by the Dallas Morning News in 2018. *See* Attachment B, pg. 3.

The defendant's probation officer in Washington met with him on December 8, 2022, out of concern for his escalating behavior. The probation officer repeatedly instructed the defendant to refrain from such communication with news outlets and the U.S. Department of Justice, however the defendant continued similar contact, stating he believed he was doing no harm. On December 15, 2022, the defendant contacted TechDirt, an online technology blog, and demanded that they remove posts discussing his previous criminal conduct. He again persisted in his unfounded yet paranoid claim that the government instructed TechDirt to keep the posts up and stated that he "cannot and will not cease and desist [his] communications." Both the Dallas Morning News and TechDirt have asked the defendant to stop, and also have reported the defendant's conduct to law enforcement. *See* Attachment C. Thus, analysis of this factor weighs against early termination.

**Section 3553(a)(2)(D):** **To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The defendant has declined the probation officer's offer for mental health services to work through his frustrations. And throughout his supervised release, the defendant has remained unemployed. While he is clearly capable of working, his present and past pattern of paranoid and harassing behavior towards media outlets and the government indicates he may not have the skills necessary for adequate, healthy, and productive integration into daily life post-incarceration. Ultimately, U.S. Probation has grown concerned about the defendant's lack of engagement in the supervision process and contends he is at high risk for re-offense. This factor weighs against early termination.

**Section 3553(a)(4):** **The kinds of sentence and sentencing range established for this offense**.

Before pleading to the instant charge, a jury convicted the defendant of one count of 18 U.S.C. § 1030(a)(5)(A). Per the offense level computation set forth in the original PSR, the defendant was facing an advisory guideline sentence of 63-78 months. PSR ¶¶ 32-42. After extensive post-trial litigation, the government filed a second superseding indictment adding Count Two, which alleged a violation of 18 U.S.C. § 371. The defendant benefitted greatly by pleading guilty to Count Two of the second superseding indictment, which capped his sentence at 5 years imprisonment, rather than the original charge brought which carried with it a maximum term of imprisonment of ten years. In other words, the defendant's sentence of 5 years imprisonment was below the minimum advisory sentencing guideline range he originally faced post the jury's guilty verdict, notwithstanding that his criminal history score was underrepresented. This factor weighs against early termination.

**Section 3553(a)(5):**   **Any pertinent policy statements.**

In his Motion the defendant articulated judicial policy governing early termination. Motion at 2. As described throughout this Response, the defendant has failed to satisfy a number of the objectives of supervised release, including stable community reintegration (employment), positive progressive strides towards supervision objective, no aggravated role in the offense, and no ongoing, uninterrupted patterns of criminal conduct. *Id*. Also, there is no presumption in favor or recommending early termination because eighteen months have not yet passed since his supervision began. *Id*. Consideration of this factor weighs against early termination.

**Section 3553(a)(6):**   **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

As discussed above, the defendant benefited from the statutory maximum term of imprisonment of five years for Count Two of the second superseding indictment. Noting that his criminal history was underrepresented (PSR ¶ 93), had his previous criminal convictions been scored, the resulting guideline range would have been 78-97 months. At 60 months, the defendant's sentence was appreciably below that range. Nevertheless, the undersigned does not have information about how other defendants guilty of similar conduct have been sentenced. Accordingly, despite his below-guideline sentence, this factor could- at best- be considered neutral with respect to consideration of early termination.

**Section 3553(a)(7):**   **The need to provide restitution to any victims of the offense.**

The defendant was ordered to pay a total of $521,478.17 in restitution owed to three of the victims. *Dkt*. 139, pgs. 5-6. The judgment states that, each month, he must pay the greater of $50 or 10% of his monthly income. *Id*. Since beginning his supervision, the defendant has not paid

more than $50 towards his restitution in any given month, and he still owes $521,028.17 as of the date of this filing. However, the defendant receives at least $2,000 per month for living expenses from his mother. This factor weighs against early termination.

### The Defendant's Motion

The defendant's motion made a number of vague and misleading arguments to support his request for early termination of supervised release. First, he began by stating he was in "full compliance in all areas of supervision," a notion that is in dispute based on his lack of employment, meaningful restitution, lack of engagement in the supervision process, and ongoing harassing conduct. Additionally, it appears that the defendant uses multiple email accounts and possibly one iPhone not previously reported to U.S. Probation as required. Second, his expressed intention to leave the country upon termination of supervision is curious given that he has not stated where he intends to go or if that country would accept him. His primary tie outside the United States is Canada, from where he was previously deported. Third, the defendant failed to consider the § 3553(a)(7) factor concerning restitution, and fourth, he minimized his offense conduct as merely "technical" and claimed this was his first criminal conviction. Motion at 4. Finally, the defendant suggests he has minimal ties to the United States. This is misleading as the defendant is a U.S. citizen residing in the state of Washington; was previously employed in the state of Washington; and has, during that period of employment, filed a lawsuit in King County, Washington against a victim he previously harassed, threatened, and conducted distributed denial of service attacks.

Accordingly, the United States respectfully requests this Honorable Court to deny the defendant's Motion.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY
Eastern District of Texas


*/s/ Camelia Lopez*
CAMELIA LOPEZ
Special Attorney
Acting Under Authority Conferred by 28 U.S.C. § 515
Texas Bar No. 24036990
101 E. Park Blvd. Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 Fax
Camelia.Lopez@usdoj.gov


## CERTIFICATE OF SERVICE

I certify that on December 29, 2022, I electronically filed this document with the Clerk of Court using the CM/ECF system. I also certify that I have emailed and mailed this document by United States Postal Service to the following non-CM/ECF participant:

Kamyar Jahanrakhshan
10710 Evergreen Way
Apt. D-306
Everett, WA 98204
kamyarj@protonmail.ch

 */s/ Camelia Lopez*
CAMELIA LOPEZ
Special Attorney